IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:04cv22

| | |
|---|---|
| L.B. PLASTICS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **MEMORANDUM AND** |
| ) | **ORDER** |
| ) | |
| AMERIMAX HOME PRODUCTS, INC., ) | |
| AMERIMAX DIVERSIFIED PRODUCTS, INC., ) | |
| D/B/A GUTTER WORLD, ) | |
| ) | |
| Defendants. ) | |

**THIS MATTER** is before the Court on the motion of Defendant Amerimax Diversified Products, Inc. ("Amerimax") for summary judgment (Doc. No.45), with supporting memorandum (Doc. No. 46), Plaintiff L.B. Plastics' motion for summary judgment (Doc. No. 47), with supporting memorandum (Doc. No. 52), and the replies of the parties (Doc. No. 54: Amerimax; Doc. No. 56: L.B. Plastics). The Court also heard oral argument on the motions on December 8, 2005. For the reasons stated below, the Court GRANTS the defendant's motion for summary judgment and DENIES the plaintiff's motion for summary judgment.

I. INTRODUCTION

    A.    L.B. Plastics' '700 Patent

L.B. Plastics brought this action asserting patent infringement of its United States Patent No. 6,463,700 ("'700 patent") by Amerimax pursuant to 35 U.S.C. § 271. (Doc. No. 1: Complaint). L.B. Plastics applied for the patent on January 16, 2001. The claimed invention related to a composite gutter guard that snaps onto existing gutters. The "novel construction" of

L.B. Plastics' gutter guard included a PVC-coated mesh layer attached to a perforated PVC guard panel by ultrasonic or heat welding. (Doc. No. 46: Amerimax Mem., Ex. B). The resulting "dual filtering system" was designed to separate twigs, leaves, and other debris from rainwater entering the gutter.

On December 5, 2001, the Patent Office rejected the claims submitted by L.B. Plastics as being unpatentable. (Doc. No. 46: Amerimax Mem., Ex. B). A prior patent issued to Sweers disclosed a rain gutter guard with a plurality of filter openings. Another prior patent issued to Cosby disclosed spot welding a mesh layer to a larger mesh screen to form a single guard panel. Therefore, the Office concluded that L.B. Plastics' claims would have been obvious to anyone skilled in the art to modify Sweers by adding the features in Cosby to filter out smaller particles and create a better seal between the two filter panels.

On February 26, 2002, counsel for L.B. Plastics met with an examiner from the Patent Office and discussed the Cosby prior art and the relevance of the continuous weld seam claimed by L.B. Plastics. (Doc. No. 46: Amerimax Mem., Ex. B). On March 11, 2002, L.B. Plastics submitted amendments to claims. (Doc. No. 46: Amerimax Mem., Ex. B). Amended Claim 1(c) identified "a continuous heat weld defining an uninterrupted longitudinal weld line connecting said mesh layer to said guard panel. . ." Amended Claim 16(c)[1] described a method of "welding the mesh layer to the guard panel along a continuous and uninterrupted longitudinal weld line extending from one end of the edge of the mesh layer to the opposing end edge of the mesh layer." Comparing its claims to the Cosby spot-weld design, L.B. Plastics noted "[t]he continuous weld line of the present invention better secures the mesh layer, and reduces the

---

[1] As part of the amendments, L.B. Plastics struck Claims 8 and 9. Therefore, in the final patent, Claim 16(c) became Claim 14(c). (Doc. No. 52: L.B. Plastics Mem., Ex. 3).

likelihood of any debris flowing beneath the mesh layer and into the gutter." Also, L.B. Plastics highlighted that its claims did not rely on roof shingles to maintain a proper seal between the mesh layer and underlying structure.

On April 25, 2002, the Patent Office approved the claims as amended, resulting in the issuance of patent '700 on October 15, 2002. (Doc. No. 52: L.B. Plastics Mem., Ex. 3).

B. Amerimax's Alleged Infringing Product

After L.B. Plastics obtained its patent and began marketing its corresponding gutter guard, Amerimax developed a product that competed with it in the marketplace. Amerimax's filter is comprised of a PVC-coated mesh screen glued onto a PVC guard panel with a hot melt adhesive. (Doc. No. 46: Amerimax Mem., Ex. C). The heat of the glue, however, does not melt or soften the mesh or guard panel. Air jets then cure the adhesive forming a bond down the entire length of the panel.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial."

3

Id. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. Evidence that is not supported is insufficient to defeat a motion for summary judgment. Id. at 323-24. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995). When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. However, "a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Id. at 252.

Thus, in a patent case, summary judgment must be granted where no reasonable jury could find two elements to be equivalent or where prosecution history estoppel would apply to entirely vitiate a particular claim element. Warner-Jenkinson Co., Inc. v. Hilton Davis Chemical Co., 520 U.S. 17, 39 n.8, 117 S. Ct. 1040, 137 L. Ed. 2d 146 (1997).

### III. DISCUSSION

#### A. Literal Infringement

"Determining whether a patent claim has been infringed requires a two-step analysis: First, the claim must be properly construed. Second, the claim as properly construed must be compared to the accused device or process." Trilogy Communications, Inc. v. Times Fiber Communications, Inc., 109 F.3d 739, 742 (Fed. Cir. 1997) (quoting Carroll Touch, Inc. v. Electro Mechanical Sys., Inc., 15 F.3d 1573, 1576 (Fed. Cir. 1993) (internal quotations omitted). Claim construction is a matter of law, while application of a properly construed claim to the accused device is a question of fact. Id.

"In construing the claims, the court looks to the claim language, the specification, the prosecution history, and if necessary, extrinsic evidence." Id. "The words of a claim are generally given their ordinary and customary meaning" as a person of ordinary skill in the art would view the term in light of the intrinsic record. Nystrom v. Trex Co., Inc., 424 F.3d 1136, 1142 (Fed. Cir. 2005). A court may resort to dictionaries and treatises to discern the meaning of claim terms. Id.

In this case, the claim terms "heat weld" and "welding" are essential to defining the invention at issue. Claims 1(c) and 14(c) use those terms to describe the process of connecting the mesh layer to the guard layer. (Doc. No. 52: L.B. Plastics Mem., Ex. 3). However, "heat weld" and "welding" are not defined in the claims. Merriam-Webster's Online Dictionary defines "weld" as "to unite [plastics] by heating and allowing the [plastics] to flow together. Merriam-Webster Online Dictionary, http://www.m-w.com/dictionary/weld. This definition is consistent with the intrinsic language of the patent. For example, the Detailed Description of the Invention section of the patent states, "The mesh layer is preferably formed of PVC-coated, woven fiberglass fabric which readily fuses to the polymer guard panel during welding to form continuous and secure weld lines and along the entire length of the mesh layer." (Doc. No. 52: L.B. Plastics Mem., Ex. 3). The term "fuses" involves melting together by heat. Trilogy Communications, 109 F.3d at 742. Therefore, the Court construes the terms "heat weld" and "welding" in the '700 patent to require the PVC-coated mesh to melt and thereby form a bond with the guard panel.

There is no dispute that the mesh layer in Amerimax's gutter guard is not attached to the guard panel by "welding" as construed above. The uncontradicted evidence shows that the heat used to apply the adhesive in Amerimax's process is not sufficient to melt the PVC-coated mesh or panel. (Doc. No. 46: Amerimax Mem. at 4, Ex. C). Thus, this case is very similar to the facts

5

in Trilogy Communications. In that case, the patented process involved "fusion-bonding" foam insulation to a sheath inside a coaxial cable by melting the foam. Id., 109 F.3d at 743. The alleged infringing product used a heat-activated adhesive to bond the foam to the sheath, but did not melt the foam. Id. at 741. The Federal Circuit affirmed the district court's grant of summary judgment in favor of the alleged infringer because its product was not made by "fusion bonding" as that term was construed. Id. at 744. Accordingly, this Court finds that no reasonable jury could conclude that Amerimax's gutter guard literally infringes on L.B. Plastics' patent because no proof shows that Amerimax's process involves "heat weld" or "welding."

B.   Infringement by Equivalent

"[A] product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the elements of the accused product or process and the claimed elements of the patented invention." Warner-Jenkinson, 520 U.S. at 21. This doctrine is applied to the individual elements of the claim, not to the invention as a whole. Id. at 30. Additionally, intent of the alleged infringer plays no role in the application of the doctrine. Id. at 36. Infringement under the doctrine of equivalents is a question of fact. Kraft Foods, Inc. v. International Trading Co., 203 F.3d 1362, 1371 (Fed. Cir. 2000). "Equivalence is shown by evidence that the accused device contains an element that is not 'substantially different' from any claim element that is literally lacking or that the claimed limitation and the accused component perform [ ] substantially the same function in substantially the same way to achieve substantially the same result." Id. (internal quotations and citations omitted).

The '700 patent claims the connection of a wire mesh to a substrate layer by ultrasonic welding. The accused device, though arguably similar in appearance to the L.B. Plastics'

6

product, connects the two components using hot glue. Whereas welding involves melting two objects and allowing the molecules at the interface to intermingle, connecting two objects with adhesive involves the introduction of a third substance. Both methods accomplish the same function of joining two objects to each other, but they do so in a different way and accomplish a different result. (Doc. No. 55: Muzzy Affidavit, ¶ 4 and Muzzy Report at 2 ). The allegation that Amerimax's expert, Dr. John D. Muzzy, is inexperienced in the "art" of plastic part fabrication (Doc. No. 56: L.B. Plastics Reply at 8) is irrelevant. Dr. Muzzy's analysis here is limited to distinguishing between the characteristics of gluing and welding, for which "practical" experience in fabrication is not required. Fed. R. Evid. 702. Furthermore, the deposition of Harry H. Davis, a twenty-eight-year veteran in the field of plastic part fabrication, is consistent with the distinction made in Dr. Muzzy's report between the nature of welding and gluing. Mr. Davis testified that welding is "a cleaner and a more economical way of doing it . . . it gives a stronger - stronger bond" compared to gluing. (Doc. No. 54: Amerimax Reply, Ex. C, Davis TR at 16-17, 62). Thus, the Court finds the connection method in the accused device does not meet all three prongs of the Function/Way/Result test for infringement by equivalence.

    C.    Prosecution History

A patent holder may be estopped from asserting infringement by equivalence where the alleged equivalent could have readily been disclosed in the patent. <u>Chiuminatta Concrete Concepts, Inc. v. Cardinal Industries, Inc.</u>, 145 F.3d 1303, 1311 (Fed. Cir. 1998). A patent holder may also be barred from raising the doctrine where amendments were made in the prosecution history that left the allegedly infringing equivalent element outside of the revised claims, but within the prior art that led to rejection of the original claims as unpatentable. <u>Warner-Jenkinson</u>, 520 U.S. at 31 (citing <u>Keystone Driller Co. v. Northwest Engineering Corp.</u>, 294 U.S. 42, 48, 55 S. Ct. 262, 79 L. Ed. 747 (1935)).

Here, the prosecution history shows that the Cosby patent was known to L.B. Plastics when it originally submitted its claims. After the patent examiner rejected L.B. Plastics' claims as obvious in light of Sweers and Cosby prior art, L.B. Plastics amended its claims to emphasize a "continuous and uninterrupted weld line" that was not taught or suggested by Cosby's disclosed spot-welding method. (Doc. No. 46: Amerimax Mem., Ex. B). Significantly, Cosby disclosed, "The fine mesh screen can be attached by adhesive, mechanical fastener, or heat welded to the wire mesh." (Doc. No. 46: Amerimax Mem., Ex. F at 4-5). Thus, the use of adhesives to bond one layer of the gutter guard to another was known at the time L.B. Plastics sought its patent. Mr. Davis, L.B. Plastics' president and inventor of the '700 patent, confirmed that he experimented with using adhesives, but decided to use welding. (Doc. No. 54: Amerimax Reply, Ex. C).

Despite its knowledge of other means of attachment, specifically including adhesives, L.B. Plastics only filed claims relating to "hot weld" or "welding" the layers of its gutter guard. The law does not allow a patentee two bites at the apple; the choice not to include in the patent what is now alleged to be equivalent precludes the application of the doctrine of equivalents. Chiuminatta Concrete Concepts, 145 F.3d at 1311. Therefore, summary judgment in favor of Amerimax is appropriate because the prosecution history bars L.B. Plastics from asserting the doctrine of equivalents. Warner-Jenkinson, 520 U.S. at 39 n.8.

D. Alleged Invalidity of '700 Patent

Having decided that Amerimax's product did not literally infringe on the '700 patent and that L.B. Plastics is estopped from asserting the doctrine of equivalents, it is not necessary for the Court to resolve Amerimax's allegation that the patent is invalid.

8

## IV. CONCLUSION

The '700 patent claims the use of "hot weld" and "welding" in the production of a composite gutter guard. Those terms necessarily involve the melting of the components to form a bond. Amerimax's product relies on adhesives, not welding, to join together the layers of its gutter guard. Therefore, Amerimax's product does not literally infringe on the '700 patent. At the time L.B. Plastics sought its patent, the use of adhesives had been disclosed by prior art. After experimenting with using adhesives, L.B. Plastics chose to define its claims with "hot weld" and "welding" with no claimed inclusion of other means of attachment. Therefore, the doctrine of equivalents can not apply to this case because L.B. Plastics could have sought to include in its patent the adhesive method it now asserts is equivalent.

**IT IS, THEREFORE, ORDERED** that

1. Amerimax's motion for summary judgment (Doc. No. 45) is **GRANTED**;
2. L.B. Plastics's motion for summary judgment (Doc. No. 47) is **DENIED**; and
3. this matter is dismissed with prejudice in its entirety.

Signed: May 16, 2006

Robert J. Conrad, Jr.
United States District Judge